THE STATE v. J. P. CHASTAIN and E. H. CHASTAIN.

*Appeal—Secret Assault—Aiding and Abetting—Judge's Charge—Evidence.*

1. A party to an action has a right to renew his appeal after having once withdrawn it, provided he does so within the time prescribed by the statute for perfecting appeals.

2. Upon the trial of an indictment against two persons—brothers—for a secret assault with an intent to kill, there was evidence tending to prove that one of the defendants made the assault under the cover of darkness and from the bushes; that the other was about one hundred and fifty yards in the rear, but in sight, armed; that upon the assault being vigorously repelled, the two fell back to a house near by, against and from which many shots were fired: *Held*, that it was not error to instruct the jury that if the evidence satisfied them that the defendant who remained in the rear took up the position with the knowledge that his co-defendant was lying in wait with intent to kill, and that it was his purpose to afford aid to his brother, if he needed it, that he was guilty as principal of the felonious assault.

This was an indictment for a Secret Assault With Intent to Kill (drawn under ch. 32, Laws of 1887), tried at the Fall Term, 1889, of the Superior Court of Clay County, before *Clark, J.*

Of the four defendants on trial, E. H. Chastain and J. P. Chastain were found guilty.

It was in evidence for the State, that before day on June 11th, 1889, J. S. Anderson, and others, were fired upon by a party lying hid in the bushes, on the creek bank; that the number and frequency of the shots (which were immediately responded to by Anderson and party) indicated the presence of more than one person; that after daylight, E. H. Chastain and J. P. Chastain were recognized in falling back from the bushes to the house, and afterwards both were seen to fire from the house; that J. P. Chastain came to the house two hours before day and told his brother (E. H. Chastain) that Anderson and party were armed and tearing down the fence; that E. H. Chastain, armed, went immediately in that direction; that J. P. Chastain soon followed, with his gun, and thereafter the firing began; that it was responded to; that after daylight the Chastains fell back to the house.

The defendant J. P. Chastain testified that he did give the information to his brother, and soon after went out with his rifle, but that he took no part in the firing, but took a position on a ridge, one hundred and fifty yards from his brother, and behind him; that he was in sight of his brother the whole fight; that Anderson fired first; that he (J. P. Chastain) was not aiding or abetting his brother, nor taking any part in the fight, but was only a spectator; that when the balls from the Anderson party began to fall around him he fell back to the house; that the Anderson party, for a couple of hours, rained balls on the side and roof of the house, though neither he nor his brother replied to them.

There was much other evidence not necessary to state. There were no exceptions to the testimony.

The Court charged, in addition to matters not excepted to and here not set forth, that if the jury were satisfied beyond a reasonable doubt that Anderson was fired upon by a person, or persons, lying concealed in ambush, hid in the bushes and covered by darkness; that such shooting was with intent to kill, and that J. P. Chastain was present, taking part in such shooting, or present aiding and abetting, he was guilty. If he was one hundred and fifty yards in the rear, but in sight of the shooting, armed with his rifle, and he was there with knowledge that his brother was to assault Anderson, by lying in wait with intent to kill, and his purpose was to afford aid and assistance to his brother, if hard pressed, and he was acting a second line of battle, or "backer," to his brother (the testimony being that his rifle would carry to the spot of the fighting) he would be aiding and abetting, and guilty as a principal. The rest of the charge is not set out. After verdict, counsel stated there was no exception he could take as to E. H. Chastain, but he moved for a new trial as to J. P. Chastain, assigning as sole error that part of the charge, that if "J. P. Chastain was one hundred and fifty yards in the rear, but in sight of the shooting, armed with his rifle, with knowledge that his brother was to assault Anderson, from a lying-in-wait, with intent to kill, and his (J. P. Chastain's) purpose was to afford aid and assistance to his brother, if hard pressed, and was acting as a second line of battle and backer for his brother, he would be aiding and abetting, and guilty as a principal."

Motion for a new trial denied.

After sentence, counsel entered an appeal for both the defendants.

After conferring with his counsel, E. H. Chastain, in open Court, withdrew his appeal, and in his hearing, and with his assent, the withdrawal of appeal was entered of record.

It appeared that after withdrawing his appeal E. H. Chastain renewed it by giving notice, and perfected it by filing bond.   The statement of case on appeal was therefore made by the Judge for both defendants, with consent of counsel.

*The Attorney General,* for the State.
*Mr. J. W. Cooper,* for the defendants.

AVERY, J.—after stating the facts: The defendant J. P. Chastain excepted to so much of the charge of the Court as related exclusively to the question of his guilt, and relies solely upon the ground of error in misdirecting the jury. As to him, the case was submitted in two aspects, both of which naturally arise out of different views of the evidence.

First, the jury were told that if the testimony should satisfy them beyond a reasonable doubt, that Anderson was fired upon by a person, or persons, lying concealed in ambush, hid in the bushes and covered by darkness, that such shooting was with intent to kill, and that if J. P. Chastain was present, taking part in such shooting, or present aiding and abetting, he was guilty.

It was not contended by counsel that the Judge did not state the law correctly in the first proposition.

It was insisted that the other view submitted was erroneous, because it was not applicable to the testimony, and for the reason that it contained an intimation of opinion on the facts.   His Honor's additional instruction was, that if he (J. P. Chastain) was one hundred and fifty yards in rear, and in sight of, the shooting, armed with his rifle, and he was there with knowledge that his brother was to assault Anderson, by lying in wait, with intent to kill, and his purpose was to afford aid and assistance to his brother, if hard-pressed, and he was acting as a second line of battle, or "backer," to his brother (the testimony being that his rifle

would carry to the spot of the fighting), he would be aiding and abetting, and guilty as a principal.

It appears, from the testimony offered on both sides, that J. P. Chastain went to the house of his brother two hours before daylight, and told him that Anderson and others were tearing down a fence, and that E. H. Chastain imme-diately went out with his gun, closely followed by his brother (J. P. Chastain), who was also armed, and, according to all the evidence, it seems that the former opened fire on Anderson and his party under the cover of the bushes and darkness. The testimony for the State tended to prove that the latter advanced with his brother, and joined actively in the attack; but he testified, in his own behalf, that he stopped one hundred and fifty yards short of the point from which his brother (E. H. Chastain) was firing, and did not shoot at all, though he remained in sight of his brother during the whole encounter, until the balls fell so thickly around him as to cause his retreat to the house. It appears as a fact, that his gun would carry a ball from the point where he was stationed to the adversary party. We cannot examine the record of another appeal, as suggested by counsel, for conflicting testimony as to the character of the weapon. Our attention must be confined to the facts appearing in this record. It seems to us that there was abundant testi-mony to make it the imperative duty of the Judge to instruct the jury that the defendant might be guilty as principal, because of aid and encouragement given by him to the other defendant, even if they believed that he did not actively participate in the attack made by his brother, and the instruction is couched in such language as to give them a clear comprehension of the law.

There is no intimation, in the charge of his Honor, that any disputed fact was or was not fully proven by the testi-mony, and it is not, therefore, amenable to objection as an expression of opinion on the facts. *The Code*, §413.

There was no exception, as expressly appears from the statement of the case on appeal, on behalf of E. H. Chastain, either to the admission of testimony or the charge of the Court. The statement is that "the Court charged, in addition to matters not excepted to," as already stated, and after embodying in the statement that portion of the charge objected to for J. P. Chastain, the Judge states that the "rest of the charge is not set out," for the obvious reason that no exception is taken to it and no error assigned. The case on appeal appears to have been stated for both defendants. E. H. Chastain first withdrew and then renewed and perfected his appeal. He had a right to renew and reinstate it, within the time prescribed by law, if he had no other object to attain but to delay the execution of his sentence. As it appears not only that he did not actually assign error, but that he did not object to any ruling of the Court as a ground of motion for a new trial we must assume that there was no error, and must refuse the motion for a *writ of certiorari.* We therefore conclude that judgment should be affirmed as to both defendants.

Affirmed.